IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DONALD RAY WALKER, | ) | No. C 02-4849 JSW (PR) |
| Petitioner, | ) | |
| | ) | **ORDER DENYING PETITION FOR** |
| vs. | ) | **WRIT OF HABEAS CORPUS** |
| | ) | |
| JIM HAMLET, Warden, | ) | (Docket No. 17) |
| | ) | |
| Respondent. | ) | |
| | ) | |
| ─────────────────────── | ) | |

## INTRODUCTION

Petitioner, Donald Walker, a prisoner of the State of California, currently incarcerated at Soledad State Prison, has filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 challenging the constitutional validity of his state conviction.  On November 4, 2002, this Court issued an order to show cause (docket no. 5).  Respondent's answer was filed on January 2, 2003 (docket no. 9).  Petitioner filed his traverse on February 5, 2003 (docket no. 15).  This order denies the petition for writ of habeas corpus on the merits.

## PROCEDURAL BACKGROUND

After a trial in Santa Clara County in 1999, Petitioner was convicted of possession of a controlled substance under Health and Safety Code § 11350(a) and of being under the influence of a controlled substance under Health and Safety Code § 11550(a) .

1    Before trial, he also plead guilty to two misdemeanor battery charges.  Petitioner was

2    sentenced under the three strikes law to a term of 25 years-to-life in state prison.  The

3    California Court of Appeal affirmed his conviction in 2001.  The Supreme Court of

4    California denied Petitioner's habeas corpus petitions on February 27, 2002 and July 24,

5    2002.  Petitioner filed the instant petition on October 8, 2002.

6                                    **FACTUAL BACKGROUND**

7          The facts underlying the charged offenses as found by the Court of Appeal of

8    California, Sixth Appellate District, are summarized below:

9            In August 1998, Petitioner lived with his girlfriend Pamela
10           Greene in a garage attached to a house in San Jose.  Greene
             testified that on August 14, 1998, she, Petitioner, and two women
11           were drinking in the garage.  One of the women and Petitioner
             were flirting with each other.  Greene argued with Petitioner about
12           his flirtatious conduct.

13           In the early morning hours of the next day, Petitioner
             began yelling at Greene who was sitting outside on the porch.
14           Greene ran down the street, where she told a neighbor that
             Petitioner had hit her.  When the police arrived, Greene spoke
15           with Officer Melloch and told her that Petitioner had jumped on
             her and then hit her.  Greene later testified that Petitioner did not
16           abuse her that day and that she was just trying to get him in
             trouble.

17           In the afternoon of August 15, Greene returned to the
18           house she shared with Petitioner, where she found him drinking
             with a Mexican woman.  Soon after, Officer Melloch arrived at
19           the house.  Petitioner and Greene went outside to meet the officer
             and "clear this mess up."  Instead, Officer Melloch arrested
20           Petitioner and placed him in the back of the police car.

21           According to Melloch, Petitioner repeatedly told Greene
             something like "tell them the truth or I'll tell them what's going
22           on."  While still in the car, Petitioner asked for his cell phone.
             Melloch testified that Petitioner stated that when she found the
23           cell phone she would "know what was going on."

24           Greene and Melloch went into the garage to look for the
             cell phone.  After the phone was found, Melloch took the cell
25           phone and black bag outside.  She asked Petitioner if they were
             his items.  Melloch testified that Petitioner admitted both the cell
26           phone and black bag were his.

27           According to Melloch's testimony, while looking for the

28                                              2

cell phone, Greene took a brown bag out of the black bag and placed it on the couch. Melloch also testified that after Petitioner told her that the cell phone found was indeed his, he also asked her if she "found it" and specified that he wanted to know if she found the "brown bag." Melloch testified that after Petitioner asked if she found the brown bag, she asked if she had permission to search his room and he responded that she did. At that point, Melloch testified, she went inside, picked the brown bag up off the couch, looked inside it, and saw drugs.

Greene testified that Petitioner only stated that the cell phone belonged to him and that she had never seen the black bag before and did not believe that the bag was Petitioner's. Greene also testified that Melloch found the brown bag inside the black bag while looking for the cell phone and that Melloch looked into the brown bag without Petitioner's direction to do so.

Melloch saw off-white rocks in the brown bag, which were later found to be 0.36 grams of cocaine base. She took Petitioner to the police station and testified that on the ride, Petitioner told her he had been up for several days smoking crack or cocaine and drinking alcohol.

*People v. Walker*, No. H020157, slip. op. at 2-5 (Cal. Ct. App.)

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S. § 2254(a). A district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has

3

on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* As summarized by the Ninth Circuit: "A state court's decision can involve an 'unreasonable application' of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000), *overruled on other grounds*, *Lockyer v. Andrade*, 538 U. S. 63, 70-73 (2003)(citing *Williams*, 529 U.S. at 405-07)

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must not only be erroneous, but objectively unreasonable); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law). In deciding whether a state court's decision is contrary to, or an reasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

If the state court only considered state law, the federal court must ask whether state law, as explained by the state court, is "contrary to" clearly established governing federal law. *See Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001); *see, e.g., Hernandez v. Small*, 282 F.3d 1132, 1141 (9th Cir. 2002) (state court applied correct

4

controlling authority when it relied on state court case that quoted Supreme Court for proposition squarely in accord with controlling authority).  If the state court, relying on state law, correctly identified the governing federal legal rules, the federal court must ask whether the state court applied them unreasonably to the facts.  *See Lockhart*, 250 F.3d at 1232.

If a state court has not given a reasoned explanation of its decision on Petitioner's federal claims, this Court must review the record to determine if the state court's rejection of the claim was objectively unreasonable.  *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  This Court will "still focus primarily on Supreme Court cases in deciding whether the state court's resolution of the case constituted and unreasonable application of clearly established federal law."  *Fisher v. Roe*, 263 F.3d 906, 914 (9th Cir. 2001); *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000)

**DISCUSSION**

**I       Admission of Evidence of Battery by Petitioner**

Petitioner contends that the trial court violated his right to due process by allowing the prosecution to introduce evidence that on the date Petitioner was arrested, Greene had accused Petitioner of assaulting her.  Petitioner contends that this evidence was more prejudicial than probative and that it permitted the jury to convict him based on the evidence that he was predisposed to commit crimes in violation of his due process rights.  Petitioner also contends that the court violated his right to due process by refusing to provide the jury with a limiting instruction regarding their consideration of the battery evidence.  The trial court refused Petitioner's request for an instruction which stated:

> Evidence has been introduced for the purpose of showing that the defendant committed a crime other than that for which he is on trial. Except as you will otherwise be instructed, this evidence, if believed, may not be considered by you to prove that defendant is a person of bad character or that he has a disposition to commit crimes.

The trial court gave the jury a limiting instruction before deliberations which

5

provided:

> Certain evidence was admitted for a limited purpose. At the time this evidence was admitted, you were instructed that it could not be considered by you for any purpose other than the limited purpose for which it was admitted. Do not consider this evidence for any purpose except the limited purpose for which it was admitted.

However, at the time in the trial when the battery evidence was introduced, the court did not instruct the jury to use it for a limited purpose.

The Court of Appeal was not persuaded by the trial court's finding that the evidence was admissible to establish why the police were at Petitioner's house. However, the Court of Appeal did find that because Greene later testified that Petitioner did not abuse her, the evidence could have established Greene's bias and could also show that when Petitioner directed Melloch to find the brown bag containing drugs, he did so because he was enraged that Greene was lying and hoped that Greene would be arrested or implicated for possession of the drugs.

A.    Legal Standard

A state court's evidentiary ruling is not subject to federal habeas review unless it deprives the defendant of the fundamentally fair trial guaranteed by due process. *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991). Therefore, failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Accordingly, a federal court cannot disturb on due process grounds a state court's decision to admit evidence of prior crimes or bad acts unless the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *See Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995). The admission of other crimes evidence can violate due process where there are no permissible inferences the jury can draw from the evidence (in other words, no inference other than conduct in conformity therewith). *See McKinney v. Rees*, 993 F.2d 1378, 1384 (9th Cir. 1993); *Jammal*, 926 F.2d at 920.

6

A state trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceedings. *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. *See id.* The omission of an instruction is less likely to be prejudicial than a misstatement of the law. *See Walker v. Endell*, 850 F.2d at 475-76 (citing *Henderson v. Kibbe*, 431 U.S. at 155). Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'" *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson*, 431 U.S. 145, 155 (1977)). Whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury. *See Duckett v. Godinez*, 67 F.3d 734, 745 (9th Cir. 1995).

The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly" and has left open the question of whether admission of propensity evidence violates due process. *Estelle*, 502 U.S. at 73, 75 n. 5; *but see United States v. LeMay*, 260 F.3d 1018, 1031 (9th Cir. 2001) (holding that new federal rules of evidence allowing evidence of prior sexual offenses to show a propensity to commit the charged offense do not violate due process because evidence is still subject to trial court balancing test which provides for meaningful review). As the Ninth Circuit has stated, "(t)he Supreme Court has explicitly held that a state practice of permitting a jury to hear evidence of prior crimes does not violate due process of the Fourteenth Amendment, at least where the trial judge gives a limiting instruction." *Fritchie v. McCarthy*, 664 F.2d 208, 212 (9th Cir. 1981) (citing *Spencer v. Texas*, 385 U.S. 554, 561 (1967)). However, the Supreme Court has not held that due process is necessarily violated if a limiting instruction is not given after potentially prejudicial evidence is introduced. *See Dowling v. United States*, 493 U.S. 342, 353 (1990) (testimony at trial regarding crime of which defendant was acquitted did not violate due process "especially in light of the limiting instructions" provided to the jury); *Marshall v. Lonberger*, 459

U.S. 422, 438-439 n.6 (1983) (affirming *Spencer*, which held that introduction of prior convictions did not violate due process, "in part because" the evidence was accompanied by limiting instructions).

B.    Analysis

The trial court admitted the battery evidence, finding that it was relevant to impeach Greene's testimony that was favorable to Petitioner and to explain why the police were at Petitioner's house.  The Court of Appeal analyzed the admission of this evidence under state law.  The Court of Appeal questioned the propriety of the trial court's admission of this evidence, finding that any potential benefit was substantially outweighed by the consumption of time needed to prove the batteries and the inherent prejudice which followed from proof that defendant committed the battery.  The court rejected the argument that the evidence was necessary to show why the police were at Petitioner's house and explained that Greene's bias would be shown only if the jury found that the accusations Greene recanted at trial were actually true, requiring a mini-trial which would be inefficient and confusing to the jury.

Additionally, the Court of Appeal found that the prosecution could just have easily shown Greene's bias through her long-term relationship with defendant.  Finally, the Court of Appeal found that the prosecution could simply have introduced evidence that Greene accused defendant of *some* wrongdoing to explain why Petitioner would have sent Melloch to find the drugs to implicate her in their possession.

Although the Court of Appeal expressed doubt whether the trial court admitted the battery evidence after properly balancing the benefits and disadvantages under state law, the Court of Appeal did not decide whether the admission of the battery evidence constituted an abuse of discretion.  Instead, the court concluded that any error in admitting the evidence without a limiting instruction was harmless because it was reasonably probable the jury would have reached a verdict more favorable to the defense if the evidence had been excluded or given a limiting instruction.

8

The Court of Appeal pointed out that the prosecutor never argued that the battery of Greene could be used to show Petitioner's propensity toward criminal conduct, and because the crimes of battery and drug possession are so different, it is unlikely that a jury would allow the battery evidence to affect their decision regarding the drug charges. Additionally, the court reasoned that the jury's questions regarding "exercising control" implied that they were applying the law to the facts and not, as Petitioner suggest, immediately finding him guilty because of a predisposition to commit crimes evidenced by the battery testimony.

Part of the prosecution's theory of the case was that Petitioner knew there were drugs in the brown bag and yet still directed Officer Melloch to get the brown bag. Respondent argues that in order for the jury to find this is what occurred, it was necessary to explain why Petitioner would act against his own self-interest.  The testimony that Greene had accused Petitioner of battery because he was upset with Greene for having him arrested and was motivated to attempt to implicate Greene for the possession of the drugs rebutted defense counsel's argument that it would be unreasonable for a guilty person to direct a police officer to the location of drugs. Therefore, there was at least one other inference the jury could draw from the evidence that Greene accused Petitioner of battery.  Moreover, the testimony regarding the alleged battery was brief; it established only Greene's accusations, not Petitioner's guilt; there was testimony that Greene was not injured when the police arrived; and the only inflammatory testimony regarding battery, that Officer Melloch saw "welts" on Greene, was immediately striken from the record.  *See* RT at 215, 233, 263-264, 304.

This Court finds that it was not a violation of Petitioner's due process rights for the battery evidence to be admitted without a limiting instruction because the state court's findings comport with federal law in that there were legitimate inferences the jury could draw from the evidence outside of Petitioner's propensity to commit crimes and the evidence was not highly inflammatory.  *See Jammal*, 926 F.2d at 920; *cf. McKinney*,

993 F.2d at 1384-1385 (finding fundamental fairness violated where erroneously admitted evidence was irrelevant, emotionally-charged and prosecution's case was solely circumstantial). Considering the jury instructions and record as a whole, it cannot be said that the brief testimony regarding Petitioner's alleged battery of Greene, introduced without a specific limiting instruction, so infected the entire trial as to make it fundamentally unfair. *See Estelle*, 502 U.S. at 72.

Moreover, this Court also agrees with the Court of Appeal's finding that if admission of the evidence was error, the error was harmless. *See Brecht*, 507 U.S. at 637-38 (federal habeas petitioner is not entitled to relief unless the trial error "'had substantial and injurious effect or influence in determining the jury's verdict,'" quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). As discussed above, the testimony regarding the battery was brief and was not highly prejudicial.

Additionally, like the Court of Appeal, this Court finds that there was ample evidence of Petitioner's guilt adduced at trial. The evidence included that the brown bag containing cocaine and Petitioner's cell phone were found in the same compartment of a black bag which Petitioner admitted to be his and that the bag containing the cell phone and drugs was found in Petitioner's home. Officer Melloch's testimony that Petitioner sent her to find his cell phone and the brown bag after threatening Pamela Greene that he would tell the Officer "what was going on" indicated that Petitioner knew there were drugs in the bag. Petitioner was also under the influence of the same drug found in the brown bag and admitted to its use over the preceding days.

Because there is no Supreme Court precedent holding that propensity evidence without a limiting instruction necessarily violates due process, the Court of Appeal's determination that any error in admitting the battery evidence was harmless was not contrary to, or an unreasonable application of, governing law. *See Stevenson v. Lewis*, 384 F.3d 1069, 1071 (9th Cir. 2004) (if there is no Supreme Court precedent that controls the legal issue raised by Petitioner, the state court's decision cannot be contrary to or an

1   unreasonable application of clearly-established federal law).  As such, Petitioner's claim

2   must be denied.

3   **II**      <u>**Jury Inquiry**</u>

4          Petitioner contends that the trial judge's response to the jury's inquiry regarding

5   the meaning of "exercising control" was so inadequate as to violate due process and

6   deprive him of a fair trial.[1]  Petitioner argues that in addition to telling the jury that

7   possession does not require ownership, the judge should have added *sua sponte* that

8   ownership or lack thereof is a factor that may be considered when determining

9   possession and explained that mere access to something does not establish the requisite

10  control.

11         A.     <u>Legal Standard</u>

12         When a federal court reviews instructions to the jury, the question is whether the

13  challenged instruction by itself so infected the entire trial that the trial can be deemed

14  fundamentally unfair in violation of the Petitioner's due process rights.  *See Estelle*, 502

_____

[1]When the jury requested a definition of "exercising control" during deliberations, the judge told them to use the words' "every day meaning."  RT at 425.  One juror then asked whether to possess something one must own it.  The judge stated that "you can be the owner, but you don't have to be the owner to possess something."  *Id*. at 426.  After the judge's answer, another juror asked if the judge was explaining "control in the context of having access to something."  *Id*.  The judge then repeated the definitions of actual and constructive possession: "'actual possession' requires that a person knowingly exercise direct physical control over a thing," and "'constructive possession' does not require actual possession but does require that a person knowingly exercise control over or the right to control a thing, either directly or through another person or persons."  *Id*. A juror then asked whether "according to the law, you must vote that they have . . . constructive possession . . . even though it hasn't been proven who owned it."  *Id*. at 426-27.  The judge repeated that possession is not necessarily ownership.  Another juror asked if the judge could "put bounds around what 'control' means."  *Id*. at 427.  The judge reminded the jury that "it's control or the right to control."  *Id*.  The jury asked if they could look in the dictionary and the judge admonished the jurors not to look in the dictionary.  *Id*.  The jury returned to deliberations and returned 15 minutes later with a guilty verdict.

U.S. at 72-73.  Due process violations can occur as a result of a judge's response to a jury inquiry.  *See Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946) (due process violation when judge gave legally erroneous instruction to jurors during deliberation); *Beardslee v. Woodford*, 358 F.3d 560, 574-75 (9th Cir. 2004) (harmless due process violation occurred when, in responding to request for clarification, court refused to give clarification and informed jury that no clarifying instructions would be given).  Therefore, the trial judge has a duty to respond to the jury's request for clarification with sufficient specificity to eliminate the jury's confusion.  *See Beardslee*, 358 F.3d at 574-75.  Just as a jury is presumed to follow its instructions, it is presumed to understand a judge's answer to a question.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

The omission of an instruction is less likely to be prejudicial than a misstatement of the law; this creates an "especially heavy burden" on a petitioner whose claim involves the failure to give a particular instruction.  *Henderson*, 431 U.S. at 155.  The significance of the omission of such an instruction may be evaluated by comparison with the instructions that were given.  *Murtishaw v. Woodford*, 255 F.3d 926, 971 (9th Cir. 2001) (quoting *Henderson*, 431 U.S. at 156).  The trial judge maintains wide discretion in charging the jury, a discretion which carries over to the judge's response to a question from the jury.  *Arizona v. Johnson*, 351 F.3d 988, 994 (9th Cir. 2003); *Wilson v. United States*, 422 F.2d 1303, 1304 (9th Cir. 1970) ("The necessity, extent and character of additional instructions are within the wide discretion of the trial court").

B.    Analysis

The Court of Appeal found that the judge's statements to the effect that ownership is not a prerequisite to possession were correct statements of law.  Additionally, it found that the standard definitions of actual and constructive possession repeated to the jury were correct statements of law.  *Cf. Murtishaw*, 255 F.3d at 971 (due process violation where petitioner showed that application of the wrong statute at sentencing fatally infected the proceedings because it could have caused jury to be confused about

discretion to impose a life sentence instead of death).  Due process is not violated merely because the judge could have added to his legally correct response to a jury's inquiry a statement that was favorable to the defense.  *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right]'").  This is not the "rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Villafuerte*, 111 F.3d at 624 (quoting *Henderson*, 451 U.S. at 154).  Because under controlling law, the judge has wide discretion in charging the jury and the judge's explanation was not legally erroneous, the Court of Appeal did not unreasonably apply federal law when it determined that the judge's explanation was sufficient.  *See Johnson*, 351 F.3d at 994; *Henderson*, 431 U.S. at 154-155.

Moreover, the Court of Appeal found that any potential error in the judge's explanation was harmless.  The court considered the jury instructions as a whole and determined that there was not a reasonable likelihood that the jury misconstrued the definition of "exercising control."  Additionally, the court reviewed the evidence of guilt in the record and found that even with the elaborations that Petitioner now argues should have been given by the judge, it was not reasonably probable that the jury verdict would have been different.  This Court agrees that any error was harmless.  *See Estelle*, 502 U.S. at 72 ("It is well established that the [challenged] instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record").  As previously discussed, the evidence of possession, meaning exercising control or the right to control, by Petitioner, even assuming that he was not the owner of the bag or the drugs, was strong.  The bag and drugs were found in Petitioner's house.  There was testimony before the jury that Petitioner directed Officer Melloch to get the brown bag, knowing it contained drugs and intending to get back at Greene, evincing his control over the drugs.  Additionally, Officer Melloch testified that

13

Petitioner told her he had been using the type of drugs found in the bag during the preceding days. Finally, the jury instructions were not legally erroneous. This Court cannot say that any inadequacy in the judge's response had a substantial and injurious effect on the jury's decision. Therefore, Petitioner's claim must fail. *See Brecht*, 507 U.S. at 637-38.

**III     Court's Refusal to Use Requested Instructions**

Petitioner asserts that in rejecting two of his proposed jury instructions, the trial court violated Petitioner's rights to due process and trial by jury. He argues that these rights are implicated because the failure to instruct the jury as requested may have allowed Petitioner to be convicted on evidence that "fell short of proof beyond a reasonable doubt." The proposed instructions would have informed jurors that finding that Petitioner was under the influence of a drug is not, by itself, a sufficient basis for finding that Petitioner was in possession of the drug.[2]

A.     Legal Standard

A state trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceedings. *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. *See id.* Failure to instruct on the theory of defense violates due process if "the theory is legally sound and evidence in the case makes it applicable" and the other instructions do not adequately embody the defense theory. *Clark v. Brown*, 442 F.3d 708, 714 (9th Cir. 2006) (quoting *Beardslee*, 358 F.3d at 577); *United States v. Del Muro*, 87 F.3d 1078, 1081 (9th Cir.

---

[2]The proposed jury instructions were as follows: "Evidence that the defendant used or ingested a controlled substance is not sufficient, standing alone, to prove past possession;" and "'Possession' as used in this instruction requires more than mere ingestion of the drug. The prosecution must prove, with evidence over and above mere ingestion or use, that the defendant possessed the drug at some time prior to its use or ingestion."

1996).  Whether a constitutional violation has occurred will depend upon the evidence in

the case and the overall instructions given to the jury.  *Duckett v. Godinez*, 67 F.3d at

745.  The Supreme Court has made clear that "an omission, or an incomplete instruction,

is less likely to be prejudicial than a misstatement of the law."  *Henderson*, 431 U.S. at

155.

      B.    <u>Analysis</u>

The Court of Appeal found that because Petitioner's proposed jury instructions

were correct statements of the law "as far as they went," the judge had a duty under state

law to give them with appropriate modifications.  However, the Court of Appeal found

the trial court's error harmless, holding that it was "inconceivable the jury might have

thought it could convict defendant of possession based solely that he was under the

influence of the same controlled substance found in the bag."  *Walker*, slip. op. at 17.

Petitioner has not met his burden of showing that the refusal to give the instructions

undermined the fairness of the entire  trial, however.  *See Henderson*, 431 U.S. at 155;

*Dunckhurst*, 859 F.2d at 114.

This is not a case of obvious constitutional error.  *Cf. Conde v. Henry*, 198 F.3d

734, 740-742 (9th Cir. 2000) (where trial court improperly precluded defense counsel

from making closing arguments explaining defendant's theory of the case, refused to

instruct the jury on the defendant's theory, and, over the defendant's objection, gave jury

instructions that did not require that the jury find every element of the offense, very

framework of trial affected and harmless error review not applicable).  The trial court

gave instructions before deliberations which made clear to the jury that "use" and

"possession" were distinct crimes and that they must decide each crime separately.  RT at

377-378; 380.  The trial court also explained every element of the offenses, including

instructing the jury that to find possession, which defined possession as "actual," which

"requires that a person knowingly exercise direct physical control over a thing," or

"constructive," which "does not require actual possession but does require that a person

knowingly exercise control over or the right to control a thing, either directly or through another person or persons."   RT at 377-380; *cf. Evanchyk v. Stewart*,  340 F.3d 933, 940-41 (9th Cir. 2003) (violation of due process based on jury instructions that omitted "intent" element of first-degree felony murder).

Further, the distinction between the crimes of "possession" and "use" was also made clear to the jury by the closing arguments.  During summation, defense counsel argued to the jury that although defendant admitted being under the influence of drugs, the prosecution had not proved that he possessed them.  RT at 400.  Following Petitioner's argument to its logical conclusion, counsel's admission of use would have sufficed to prove the possession charge against him.  Moreover, the jury's questions regarding "exercising control" reflect that they were in fact deliberating on the question of Petitioner's control over the drugs in the bag.  Additionally, the prosecutor specifically told the jury that the fact that Petitioner was under the influence of the same drug as found in the bag "is evidence you can consider in believing that he was in possession of that drug." *Id.*

After reviewing the record as a whole, this Court finds persuasive the reasoning of the Court of Appeal that the jury could not conceivably have believed that they could convict Petitioner solely based on the evidence of use.  Petitioner has not met his burden of showing that there was constitutional error in refusing his proposed jury instructions or that the error was not harmless.  Therefore, the Court of Appeal's rejection of Petitioner's claim that the judge's refusal to use his requested jury instructions violated his right to due process and was not harmless was not contrary to, or an unreasonable application of, clearly established federal law.  *See Brecht*, 507 U.S. at 637-38.

**IV    Ineffective Assistance of Counsel**

Petitioner contends that his trial counsel was ineffective in numerous ways.  He first claims that there is no way counsel could have been effective because she was substituted for Petitioner's original counsel only five days before trial began, though both

attorneys came from the same public defender's office.  Additionally, he alleges that counsel was ineffective in failing to investigate ownership of the cell phone introduced at trial.  Petitioner claims that if counsel had investigated the ownership of the cell phone, she would have learned that it did not belong to Petitioner, as he had told her.  Petitioner also claims that counsel was ineffective for failing to object to the prosecution's introduction of the cell phone at trial, although he does not specify on what basis. Petitioner claims that because there was no evidence beyond allegedly perjured testimony that the cell phone belonged to him, counsel had a duty to object to any reference to the cell phone at trial.

Petitioner further contends that counsel was ineffective for failing to locate potential witnesses who would have testified that the black bag did not belong to Petitioner and introducing evidence that a Mexican girl who was present in the garage at the time the police arrived stated that she left her drugs in the garage.  Petitioner asserts that counsel should have learned this witnesses identity through Pamela Greene.

Finally, Petitioner asserts that counsel failed to sufficiently challenge the conflicting testimony of Pamela Greene, Officer Melloch, and Officer Wedlow regarding whether Petitioner directed Officer Melloch to get his phone, who searched the black bag, and whether Petitioner directed Officer Melloch to get the brown bag (which contained the drugs at issue).  There is apparently no reasoned state court opinion deciding Petitioner's ineffective assistance claims.

B.    <u>Legal Standard</u>

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

A Petitioner can make out a claim of ineffective assistance of counsel only by pointing to specific errors made by trial counsel and showing that these errors were not the result of reasonable professional judgment. *See United States v. Cronic*, 466 U.S. 648, 666 (1984); *Strickland*, 466 U.S. at 690.  Also, judicial scrutiny of counsel's performance must be highly deferential, as a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.  When counsel chooses not to investigate a theory, her decision "must be directly assessed for reasonableness in all the circumstances." *Silva v. Woodford*, 279 F.3d 825, 836 (9th. Cir. 2002)(quoting *Strickland*, 466 U.S. at 491).  A reasonable investigation is one which would enable counsel to make informed decisions about how best to represent her client. *Avila v. Galaza*, 297 F.3d 911, 924 (9th Cir. 2002).

A habeas petitioner has the burden of showing through evidentiary proof that counsel's deficient performance caused him prejudice. *See Toomey v. Bunnell*, 898 F.2d 741, 743 (9th Cir.), *cert. denied*, 498 U.S. 960 (1990); *see also Rios v. Rocha*, 299 F.3d 796, 813 n.23 (9th Cir. 2002) (rejecting two ineffective assistance of counsel claims based on petitioner's failure to produce evidence of prejudice).

B.   Analysis

Petitioner's argument that counsel was per se ineffective because she was only assigned to his case 5 days before trial does not constitute ineffective assistance because it does not attribute a specific prejudicial error to counsel. *See Cronic*, 466 U.S. at 666; *see also Ortiz v. Stewart*, 149 F.3d 923, 933 (9th Cir. 1998) (inexperience alone does not establish ineffectiveness); *Smith v. Ylst*, 826 F.2d 872, 875 (9th Cir. 1987) (petitioner still required to show prejudice when alleging that counsel was suffering from mental illness during trial).  In and of itself, it does not constitute ineffective assistance for one attorney

in an office to replace another in representing an individual shortly before trial.  As such, Petitioner's claim fails.

Petitioner's second claim of ineffective assistance fails because Petitioner has not introduced any evidence showing that he was actually prejudiced by counsel's alleged deficiencies in failing to investigate the cell phone and object to its admission at trial. Petitioner asserts that the cell phone did not belong to him, but provides no evidence indicating that the cell phone belonged to another person.

He supports his claim by stating that Pamela Greene lied when she testified that the phone was Petitioner's and that Officer Melloch lied when she testified that Petitioner admitted to her that the phone was his.  Mere accusations of perjury by two witnesses, without any support does not provide a sufficient factual basis from which this Court could find that Petitioner was prejudiced by his counsel's failure to investigate and object to the prosecution's use of the phone. *See United States v. Gibson*, 690 F.2d 697, 703-04 (9th Cir. 1982) (failure to make evidentiary objections does not render assistance ineffective unless challenged errors can be shown to have prejudiced the defense). Because Petitioner could only have been prejudiced by the prosecution's use of the cell phone if the phone did not belong to him, his failure to introduce evidence showing that the phone belonged to someone else defeats his ineffective assistance of counsel claim on this issue. *See Strickland*, 466 U.S. at 697, 700 (it is not necessary to determine if counsel was deficient before examining prejudice; if Petitioner cannot show prejudice, ineffective assistance claim fails).

Petitioner has also not provided any evidentiary support showing that he was prejudiced by counsel's failure to locate two potential witnesses; in particular, Petitioner provides no affidavits from the witnesses, an investigator, or other individual that they would have testified as he claims.  One of these witnesses was Kenny Beasley, who Petitioner asserts would have testified that he owned the black bag in which the brown bag containing drugs was found, that he owned the phone book also found in the black

bag, and that he had left the black bag at Petitioner's house while Petitioner was not present.  Petitioner also identified Tonya Jones, who he claims would have testified that she was in the garage where Petitioner and Greene lived when the police arrived and that a Mexican woman who was also present in the garage told her that she left her drugs in the garage.

Petitioner claims that he told counsel that Pamela Greene knew the names of both Tonya Jones and Kenny Beasley.  But, his assertions in the petition are contradicted by Greene's testimony that she had never seen the black bag and did not know who it belonged to, RT at 228, and that only "some Mexican girl" was present at the garage when the police arrived, RT at 216.  She did not mention a black woman being present in the garage, nor did she mentioned Jones by name.  Moreover, Petitioner's assertions are further contradicted by trial counsel's statements in court that she was unable to locate through an investigator the women Petitioner claimed were in his garage when the police arrived because she did not know their names.  RT at 11, lines 4-6 and RT at 34, lines 3-22.

Petitioner has not provided any evidence outside of his speculation that the witnesses would have testified on his behalf as he described.  *Cf. Riley v. Payne*, 3352 F.3d 1313, 1317 (9th Cir. 2003) (ineffective assistance found when record contained sworn declaration from potential witness describing to what he would have testified); *Rios,* 299 F.3d at 800 (ineffective assistance when five witnesses who testified at trial on behalf of co-defendant provided declarations and/or testimony that they would have provided exculpatory testimony at trial on petitioner's behalf).  Such a showing is not sufficient to establish prejudice.  *See Alcala*, 334 F.3d at 872-73 (to establish prejudice caused by the failure to call a witness, a petitioner must show that the witness was likely to have been available to testify, that the witness would have given the proffered testimony, and that the witnesses' testimony created a reasonable probability that the jury would have reached a verdict more favorable to the petitioner).

1    Petitioner's claim based on counsel's supposed failure to adequately attack the

2    inconsistencies in the testimony of Pamela Greene, Officer Melloch, and Officer

3    Wedlow also fails.  Petitioner first challenges counsel's failure to highlight an

4    inconsistency regarding whether Petitioner told Melloch to get his cell phone.  At trial,

5    Pamela Greene testified that after Petitioner was arrested and placed in the back of the

6    police car she heard Petitioner say "Have Pam go get my cell phone."  RT at 250.

7    Officer Melloch's police report and her testimony was that Petitioner directed her to get

8    his cell phone.  Ex. to Pet'r Traverse; RT at 271.  Officer Wedlow testified at trial that he

9    heard Petitioner and Officer Melloch discussing Melloch going to retrieve Petitioner's

10   phone.  RT at 188-89.  Because the  testimony regarding whether Petitioner directed

11   Officer Melloch to get his cell phone is not inconsistent, counsel was reasonable for not

12   further highlighting it.  *See United States v. Mayo*, 646 F.2d 369, 375 (9th Cir.), *cert.*

13   *denied*, 454 U.S. 1127 (1981) (holding that a difference of opinion as to trial tactics does

14   not constitute denial of effective assistance).

15    Petitioner next challenges an alleged inconsistency regarding who actually

16   searched the black bag and whether Petitioner directed Melloch to the brown bag.

17   Greene and Melloch offered conflicting testimony as to which one of them actually

18   searched the black bag and located the cell phone.  *See,* RT 227; RT 272.  Greene's

19   testimony also conflicts with Melloch and Wedlow's testimony regarding whether

20   Petitioner told Melloch to get the brown bag.  *See,* RT 229; RT 276-277; RT 189-90.

21   Petitioner contends that the conflicting testimony clearly establishes that one of the

22   witnesses committed perjury and that counsel was ineffective for not questioning the

23   witnesses about this conflict of testimony in order to determine who was telling the truth.

24    Petitioner does not, however, point out how his defense was prejudiced by

25   counsel's failure to challenge these inconsistencies, either through counsel's strategic

26   decision or her inadvertence.  *See Strickland*, 466 U.S. at 700.  Because Petitioner has

27   not established that the identity of the person who searched the black bag is relevant to

28                                                      21

whether he was in possession of the drugs, he cannot show that counsel ought to have done so.  Petitioner contends in his petition that Greene lied on the stand when she stated that Petitioner's phone was found in the black bag.  Therefore, his argument goes, if counsel could establish that Greene lied about who searched the bag, the jury would have reason to also question her testimony about the cell phone.

Greene also testified that the black bag did not belong to Petitioner and that Petitioner did not send Melloch to find the brown bag; both are statements beneficial to his defense.  RT at 227-228.  Moreover, Petitioner fails to recognize the Greene's testimony was already undermined by the prosecution.  RT at 232-233, 386.  Hence, trial counsel would be reasonable in deciding not to undermining Greene's testimony about the search because it would also undermine some important testimony beneficial to Petitioner and would be repetitive.  *See Brodit v. Cambra*, 350 F.3d 985, 994 (9th Cir. 2003) (trial attorney provided effective assistance of counsel where attorney declined to present evidence favorable to defense out of concern that it would open door to unfavorable evidence).

Petitioner next contends that counsel was ineffective because she chose not to attempt to prove at trial that the drugs belonged to Pamela Greene.  He argues that since his original attorney was planning to use that strategy and trial counsel later stated that she believed Greene did possess the drugs, counsel was unreasonable for not making the argument to the jury that the drugs belonged to Greene.  However, Petitioner's argument is unavailing because the possession charge allows for possession by more than one person. RT at 378-379.  Even if counsel had argued that Greene owned the drugs, that alone would not undermine the remaining evidence against Petitioner.  Therefore, it was a reasonable decision not to argue that Greene owned the drugs.  Because counsel's decision was reasonable considering the elements of the possession charge, it was not ineffective.  *See United States v. Chambers*, 918 F.2d 1455, 1461 (9th Cir. 1990) ("we have repeatedly refused to second-guess counsel's strategic decision to present or forgo a

particular theory of defense when such decision was reasonable under the circumstances") (quoting *United States v. Layton*, 855 F.2d 1388, 1420 (9th Cir. 1988)).

Because Petitioner has not established that he was actually prejudiced by any of counsel's alleged deficiencies, the state court's denial of his claims of ineffective assistance of counsel were not contrary to, or an unreasonable application of, federal law. *See Strickland*, 466 U.S. at 700 (failure to make the required showing of prejudice defeats and ineffective assistance claim); *Toomey*, 898 F.2d at 748 (to succeed on an ineffective assistance claim when alleging counsel made specific errors, petitioner must establish that without counsel's errors there is a reasonable probability that the result would have been different); *see also Rios*, 299 F.3d at 813 n.23 (9th Cir. 2002) (rejecting ineffective assistance of counsel claims based on petitioner's failure to produce evidence of prejudice).

**V      Prosecutorial Misconduct**

Petitioner claims that the prosecutor investigated the cell phone found near the bag of drugs and learned that it did not belong to Petitioner.  Petitioner contends that even after the prosecutor was made aware that the phone did not belong to Petitioner, the prosecutor solicited from Pamela Greene  allegedly false testimony that the phone belonged to Petitioner.  Petitioner argues that because the prosecutor did not mark the cell phone as a separate exhibit at trial, it logically follows that the prosecutor was purposely hiding the fact that the phone did not belong to Petitioner.  There is apparently no reasoned state court opinion deciding Petitioner's prosecutorial misconduct claim.

A.      Legal Standard

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair."  *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  When a prosecutor obtains a conviction by the use of testimony which he knows or should know is perjured, such conviction must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury.  *See United*

*States v. Agurs*, 427 U.S. 91, 103 (1976).  To prevail on a claim that prosecutorial misconduct allowed the introduction of false evidence or testimony into a trial, the petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material.  *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003) (citing *Napue v. Illinois*, 360 U.S. 264, 269-71 (1959).  Petitioner must establish a factual basis for attributing to the government knowledge of false evidence or perjury.  *See Morales v. Woodford*, 388 F.3d 1159, 1179 (9th Cir. 2004).

B.    Analysis

Petitioner's claim fails because he has not established a factual basis in the record for his claim of prosecutorial misconduct.  First, Petitioner has not shown that the evidence of his ownership of the cell phone was in fact false.  *See Zuno-Arce*, 339 F.3d at 889.  Petitioner's unsupported unsworn statements are contradicted by the testimony at trial from Pamela Greene that the phone belonged to Petitioner, RT at 227, and from Officer Melloch, who testified that Petitioner told her that the cell phone belonged to him.  RT at 275.

Second, Petitioner has not shown that the prosecution knew the phone did not belong to Petitioner and therefore knew that Greene committed perjury when she stated that the cell phone belonged to Petitioner.  *See Zuno-Arce*, 339 F.3d at 889.  A claim of prosecutorial conduct cannot rest solely on Petitioner's statement that he "believes that [the prosecutor] had checked the records" and knew the phone did not belong to Petitioner."  *See Morales*, 388 F.3d at 1179 (finding that affidavit that a witness lied at trial was insufficient to warrant an evidentiary hearing on prosecutorial misconduct claim; even if witness lied, petitioner still provided no evidence that prosecutor was aware).

Because Petitioner has not established that false evidence and false testimony were introduced at his trial, or that the prosecution, knew the evidence and testimony

were false, the state court's denial of his claim of prosecutorial misconduct was not a contrary to, or an unreasonable application of, clearly established federal law. *See Zuno-Arce*, 339 F.3d at 889; *cf. Napue v. Illinois*, 360 U.S. at 269-71 (holding that when a prosecutor failed to correct testimony he knew to be false, petitioner's due process rights were infringed).

**VI      Cumulative Error**

Petitioner claims that even if the errors in his trial did not separately cause him sufficient prejudice, the cumulative effect of the errors made his trial fundamentally unfair.

A.      Legal Standard

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution) But, where no single constitutional error exists, nothing can accumulate to the level of a constitutional violation requiring reversal of petitioner's conviction. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).  Cumulative error is more likely to be found prejudicial when the government's case is weak. *See United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996) (prejudice resulting from cumulative effect of improper vouching by prosecutor, improper comment by prosecutor about defense counsel, and improper admission of evidence previously ruled inadmissible required reversal even though each error evaluated alone might not have warranted reversal); *see, e.g., Thomas v. Hubbard*, 273 F.3d 1164, 1180 (9th Cir. 2002) (noting that the only substantial evidence implicating the defendant was the uncorroborated testimony of a person who had both a motive and an opportunity to commit the crime).

B.     Analysis

This Court has not found that in denying any of Petitioner's individual claims the state courts violated Petitioner's constitutional rights.  Additionally, any potential errors were found by the state court and this Court to be harmless.  Moreover, as set forth above, the prosecution's case against Petitioner was strong.  *Cf. Frederick*, 78 F.3d at 1381 (finding that cumulative effect of improper vouching by prosecutor, improper comment by prosecutor about defense counsel, and improper admission of evidence previously ruled inadmissible required reversal when "the case was a close one").  Petitioner's case is not one of the rare cases in which cumulative errors denied him a fair trial.  *Cf. Alcala v. Woodford*, 334 F.3d at 893-95 (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution).  The state court's rejection of Petitioner's cumulative prejudice claim was not contrary to, or an unreasonable application of, governing law**.**  *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002); *Fuller v. Roe*, 182 F.3d 699, 704 (9th Cir. 1999); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

**VII     Enhancement based on Prior Convictions**

According to Petitioner, his first plea, in 1973, was not validly obtained because Petitioner does not remember being read his rights.  Petitioner argues that his sentence should be vacated because it was improper for the court to enhance his sentence under the three strikes law using a conviction based upon a guilty plea allegedly not validly obtained.  Additionally, Petitioner claims that counsel was ineffective because she did not challenge the validity of the prior strikes and because she advised him to waive his state right to a jury trial on the prior convictions.  According to Petitioner, a jury trial on the convictions would have prevented the strikes from being used to enhance his sentence because there would have been insufficient evidence for the jury to find that Petitioner had suffered the convictions and that the convictions were valid.  In addition, he claims that counsel did not adequately describe to him the burden of proof the

26

prosecution would face in a jury trial on the prior strikes.  Petitioner asserts that had he known what the prosecution needed to prove, he would never have agreed to waive his state right to a jury trial on the priors.  There is apparently no reasoned state court opinion deciding Petitioner's prior convictions claims.

     A.    <u>Legal Standard</u>

A petitioner may not generally attack the validity of his prior convictions in a collateral proceeding, such as habeas corpus.  *See Lackawana County Dist. Attorney v. Coss*, 532 U.S. 394, 403-404 (2001).  Once the conviction is no longer open to direct or collateral challenge in its own right, the conviction is regarded as presumptively valid.  *Id.* at 404.  The only situation in which a petitioner may challenge an enhanced sentence in a §2254 petition is on the basis that the prior conviction used to enhance the sentence was obtained without counsel in violation of the Sixth Amendment.  *Id.*

In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, petitioner must establish that counsel's performance was deficient and that he was prejudiced by counsel's deficient performance.  *Strickland*, 466 U.S. at 687-88.   To establish prejudice, petitioner must show that confidence in the result of the proceedings is undermined because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

     B.    <u>Analysis</u>

Because Petitioner did not challenge his 1973 conviction and he is no longer serving a sentence for it, he cannot attack it in a collateral proceeding and it is presumed valid.  *See Lackawana*, 532 U.S. at  403-404.  Petitioner's declaration that he does not remember being read his rights in 1973 does not rebut the presumption that his convictions were valid.  *See Parke v. Raley*, 506 U.S. 20, 31 (1992) (when challenging final conviction on collateral review, it is fair to give petitioners the burden of proof in showing that a conviction was not valid).  The fact that the state no longer has transcripts

memorializing Petitioner's guilty pleas as knowing and voluntary does not undermine the validity of the guilty pleas. *Parke*, 506 U.S. at 30 ("it defies logic to presume from the mere unavailability of a transcript . . . that the defendant was not advised of his rights). Petitioner's claim that the trial court illegally used the convictions to enhance his sentence is without merit.

Petitioner also cloaks his challenge to the validity of his prior convictions in an ineffective assistance of counsel claim. Instead of challenging the validity of his prior strikes, counsel made a motion requesting that the judge strike Petitioner's prior convictions "in the interest of justice," as the judge has discretion to do under California law, as explained in *People v. Superior Court (Romero)*, 13 Cal. 4th 497 (1996). CT at 226-234. Petitioner has not established that it was unreasonable for counsel to decide to make this  motion to strike instead of, or in addition to, challenging the validity of his prior convictions. Counsel had a strong argument that "the interests of justice" warranted striking defendant's prior convictions. She explained Petitioner's troubled social history and the fact that the convictions relied on to enhance Petitioner's sentence were decades old. CT at 226-234. The fact that the trial judge disagreed with counsel's argument does not make it unreasonable. *See Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir.), *cert. denied*, 469 U.S. 838 (1984) (tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available).

Moreover, Petitioner has not satisfied his burden to prove that he was prejudiced by counsel's allegedly unreasonable advice - i.e., that had Petitioner had a jury trial on his prior strikes, there would have been insufficient evidence for a reasonable jury to find that Petitioner suffered the two prior strikes. *See Strickland*, 466 U.S. at 694; *see also United States v. Thomas*, 417 F.3d 1053 (9th Cir. 2005) (when evidence of guilt on certain charges was overwhelming, ineffective assistance claim failed because petitioner did not show that he was prejudiced by counsel's decision to concede guilt on those charges and focus on the most defensible charges). The Supreme Court of California has

clarified that in a trial on a defendant's prior convictions, the jury's task is now generally limited to determining the authenticity of the documents submitted to establish the prior convictions. *See People v. Epps*, 25 Cal. 4th 19, 23 (2001). The prosecution introduced copies of the abstracts of judgment, commitment to the California Youth Authority, fingerprint cards and a Bureau of Identification report, certified by the Department of Corrections, relating to Petitioner's prior convictions. CT at 195-224. Petitioner does not explain why these documents would be insufficient to prove that he suffered the two prior convictions. *Cf. People v. Tenner*, 6 Cal. 4th 559, 566 (1993) (an abstract of judgment and state commitment form, considered in light of the unrebutted presumption that an official duty is regularly performed, constitute sufficient evidence to support a finding that a defendant completed a prior prison term); *People v. Castillo*, 217 Cal. App. 3d 1020, 1023-1025 (Cal. App., 1990) (abstract of judgment of prior burglary conviction, plus evidence of subsequent conviction three years later, sufficient evidence for trial court to infer defendant had completed his prior prison term for former conviction). As such, Petitioner's claim fails.

**VIII   Cruel and Unusual Punishment**

Petitioner asserts that his sentence under California's three strikes law of 25-years-to-life for possession of 0.36 grams of cocaine after suffering two prior strikes is cruel and unusual in violation of the Eighth Amendment. Petitioner argues an Eighth Amendment violation because drug possession is a victimless crime, Petitioner has not been given an opportunity to participate in a drug treatment program, and Petitioner's prior strikes are 20 and 30 years old.

The following criminal history was reported by the probation officer to the court regarding Petitioner's criminal history:

    1973:  robbery - sentenced to California Youth Authority
    1975:  possession of stolen property
    1977:  possession of stolen property and possession of a concealed weapon
    1981:  two convictions for sale of marijuana
    1981:  two counts of robbery; four counts of false imprisonment - sentenced to

state prison

1989:  possession of a firearm by a convicted felon - sentenced to state prison

CT at 242.  The probation officer's pre-sentence report also included a description of the nature and circumstances surround Petitioner's prior strike felonies.

1973 robbery: Police responded to a report of a robbery at a fast food restaurant by two suspects.  A vehicle matching the description was observed and a high speed pursuit occurred for approximately 15 minutes.  The vehicle stopped after the driver lost control and the defendants began to flee.  The driver struggled, but was subdued by police.  Nearby, a group of three persons was observed and one fired a shot at police.  Police returned fire and wounded defendant, who was part of the group.

1981 robbery: Defendant and two codefendants entered a pawn shop and forced to the four occupants to lie behind a counter at gunpoint; two occupants were handcuffed.  The defendant fled with $20,000 in property, guns and money.  Police discovered a vehicle matching the description and a high speed chase ensued.  The vehicle eventually stopped and the defendant was found hiding in nearby bushes.

CT at 240-241.  The probation officer reported that in addition to the above felonies, Petitioner had incurred thirty-two misdemeanor convictions, five of which resulted in probation.  CT at 241.  There were five misdemeanors for battery, four for driving under the influence, and three for being under the influence of a controlled substance.  CT at 242.  Four of the batteries resulted in probation: two for battery upon a cohabitant and two for corporal injury to a cohabitant in violation of a domestic violence protective order.  CT at 241.  These four misdemeanor convictions in particular were not as remote in time, dating from 1995 until 1998.

After considering dismissing the 1973 prior strike because of it's remoteness in time, the judge concluded that, based on the pre-sentence report, Petitioner's criminal history did not justify dismissal of the charges.  According to the judge, Petitioner did "not fall within the spirit or meaning" of the exception to the three strikes law.  RT at 443.

A.    Legal Standard

A criminal sentence that is not proportionate to the crime for which the defendant was convicted violates the Eighth Amendment.  *Solem v. Helm*, 463 U.S. 277, 303

(1983) (sentence of life imprisonment without possibility of parole for seventh nonviolent felony violates 8th Amendment).  But "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare."  *Id.* at 289-90.  "The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime."  *Ewing v. California*, 538 U.S.11, 24-25 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)).

When a court reviews a sentence under this proportionality principle, the threshold question is whether petitioner's sentence is one of the exceedingly rare cases in which a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.  *Harmelin*, 501 U.S. at 1005; *Ewing*, 539 U.S. at 30-31 (applying *Harmelin* standard).  Only if such an inferences arises does the court proceed to compare petitioner's sentence with sentences in the same and other jurisdictions, as suggested by *Solem*.  *See Harmelin*, 501 U.S. at 1005; *cf. Ewing*, 539 U.S. at 23.

In evaluating whether a sentence is grossly disproportionate under a recidivist sentencing statute, the court looks to whether such an "extreme sentence is justified by the gravity of [an individual's] most recent offense and criminal history." *Ramirez v. Castro*, 365 F.3d 755, 768 (9th Cir. 2004).  In judging the appropriateness of a sentence under a recidivist statute, a court may take into account the government's interest not only in punishing the offense of conviction, but also its interest "'in dealing in a harsher manner with those who [are] repeat[] criminal[s].'"  *United States v. Bland*, 961 F.2d 123, 129 (quoting *Rummel v. Estelle*, 445 U.S. 263, 276 (1980), *cert. denied*, 506 U.S. 858 (1992)).

The Eighth Amendment does not preclude a state from making a judgment that protecting the public safety requires incapacitating criminals who have already been

convicted of at least one serious or violent crime, as may occur in a sentencing scheme that imposes longer terms on recidivists. *Ewing*, 538 U.S. at 29-30 (upholding 25-to-life sentence for recidivist convicted of grand theft); *Rummel*, 445 U.S. at 284-85 (upholding life sentence with possibility of parole for recidivist convicted of fraudulent use of credit card for $80, passing forged check for $28.36 and obtaining $120.75 under false pretenses); *Bland*, 961 F.2d at 128-29 (upholding life sentence without the possibility of parole for being a felon in possession of a firearm with thirteen prior violent felony convictions, including rape and assault)

That there is a gross proportionality principle applicable to non-capital sentences is established federal law, although the "precise contours" of the principle "are unclear." *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003). In *Rummel*, 445 U.S. at 281, 284-285, the Court declined to compare Rummel's sentences either interjurisdictionally or with other crimes in his jurisdiction warranting the same penalty. Instead, the Court upheld a recidivist statute imposing a life sentence for obtaining $120.75 by false pretenses, after the defendant had already been convicted of fraudulent use of credit card for $80, and passing forged check for $28.36. *Id.* The Court held that states have a legitimate interest in punishing repeat offenders and the amount of punishment a state chooses is "largely within the discretion of the punishing jurisdiction." *Id.* at 285.

In *Solem*, 463 U.S. at 292, the Court found that the Eighth Amendment prohibited the imposition of a life sentence without possibility of parole for a seventh nonviolent felony. The Court pointed out that Helm's crime was "one of the most passive felonies a person could commit;" his previous felonies were all nonviolent and none was a crime against a person; and his sentence was the most severe penalty available in the State in which he was sentenced. *Id.* at 296-297. The Court found that Helm had been punished in the same manner as, or more severely than, criminals who had committed far more serious crimes, such as murder, treason, first-degree manslaughter, first-degree arson and kidnapping. *Id.* at 298-299. Finally, the Court found that Helm could not have received

such a severe sentence in 48 of the 50 states.  *Id.* at 299.  The Court also unambiguously stated in *Solem* that it did not overrule *Rummel* and distinguished *Rummel* on the point that the defendant in *Rummel* could have been eligible for parole in 12 years, while Helm would *never* be eligible for parole. *Id.* at 300, 303, n. 32.

In *Harmelin*, 501 U.S. 957, the Court upheld under the Eighth Amendment a mandatory life sentence without possibility of parole for a first time felony of possession of 672 grams of cocaine.  The Court found that because of the "gravity of the offense" and the State's interest in punishing drug offenders, the sentence did not raise an inference of gross disproportionality.  *Id.* at 1005, 1009.  Because there was no inference of gross disproportionality, the Court found it unnecessary to perform the intrajurisidictional and interjurisdictional analyses used in *Solem*.  *Id.* at 1005.

More recently, in *Andrade*, 538 U.S. at 73, the Court held that it was not contrary to established precedent for a state court to rely on *Rummel* in upholding a sentence of two consecutive terms of 25-years-to-life for the crime of theft with a prior conviction after the defendant stole $150 worth of videotapes from two stores.  The Court held that the gross disproportionality principle "reserves a constitutional violation for only the extraordinary case."  *Id*. at 77.

Finally, in *Ewing*, 538 U.S. 11, the Court held that a 25-to-life sentence for a fifth felony of stealing three $399 golf clubs was not a violation of the Eighth Amendment.  It affirmed that the State has a valid interest in severely punishing recidivists, to which the Court should often defer.  *Id.* at 30.  It explained that when a court reviews a recidivist's sentence, it should consider not only the current felony, but also the individual's "long history of recidivism."  *Id.* at 29.  Ewing had committed several serious felony offenses, including robbery and three residential burglaries, and had served nine separate terms of incarceration; moreover, many of his crimes were committed while he was on probation or parole.  *Id*. at 30.

The Ninth Circuit has revisited the availability of gross disproportionality

challenges after *Ewing* and *Andrade*. In *Ramirez,* the Ninth Circuit held that a 25-to-life sentence was grossly disproportionate to the crime committed where the current crime was petty theft with a prior theft-related conviction and the two prior strikes were robbery convictions. Ramirez's criminal past paled in comparison to that in *Solem*, *Ewing*, and *Andrade*, where the defendants had been repeatedly in and out of prison, had received substantial sentences and had been convicted of multiple felonies. *Id.* at 769.

In *Reyes v. Brown*, 399 F.3d 964 (9th Cir. 2005), the Ninth Circuit considered a 26-to-life sentence for a petitioner whose current conviction was for perjury for making misrepresentations on a DMV driver's license application when he impersonated a friend. His prior convictions were a 1981 residential burglary conviction committed as a juvenile and a 1987 armed robbery conviction and he had a history of non-strike and nonviolent offenses. The court remanded the case for the district court to develop the record with the implication that if the circumstances surrounding the armed robbery wasn't bad enough, Reyes should be granted habeas relief. *Id.* at 969.

In between *Ramirez* and *Reyes*, the Ninth Circuit decided another Three Strikes case and found a 25-to-life sentence to be constitutional. *See Rios v. Garcia*, 390 F.3d 1082 (9th Cir. 2004). Rios shoplifted two watches having a combined value of $79.88, was chased by a loss prevention officer and was apprehended in the store parking lot after a minor struggle. *Id.* at 1083. His two strike convictions were from a 1987 guilty plea to two counts of robbery. The court determined that "*Ewing* and *Andrade* compel the conclusion that Rios's sentence was not grossly disproportionate to his crime in light of his criminal history." *Rios*, 390 F.3d at 1086. The court considered the real sentence in *Rios* to be lighter than that imposed in *Andrade* because Rios had to serve only 25 years while the *Andrade* defendant had to serve 50 years before being eligible for parole. *Rios*, 390 F.3d at 1086. The court found *Ramirez* distinguishable because Rios attempted to avoid apprehension, his prior strikes involved the threat of violence, and he had a lengthy criminal history, including several terms of incarceration. *Rios*, 390 F.3d at

34

1086.  In sum, it is clear under Supreme Court precedent that "successful challenges to the proportionality of particular sentences should be exceedingly rare." *Hutto v. Davis*, 454 U.S. 370, 374 (1982), (citing *Rummel*, 445 U.S. at 274, 272).

      B.    <u>Analysis</u>

      In *Ewing* and *Andrade*, the Supreme Court made clear that the threshold for establishing gross disproportionality is high when petitioner's sentence is based on their criminal history.  *Ewing*, 538 U.S. at 30 (sentence of 25-to-life for stealing less than $1200 in goods justified by previous convictions for robbery and three burglaries); *Andrade*, 538 U.S. at 66-67 (two consecutive sentences of 25-to-life upheld where current offense could have been charged as a misdemeanor, petitioner had several petty theft offenses, two transportation of marijuana felonies, and a state parole violation).  In this case, Petitioner's criminal history is not any less serious than that of the defendants in *Ewing* or *Andrade*.  As explained above, Petitioner has thirteen felony convictions, dating from 1973 to 1989, followed by his current felony conviction in 1998.  The 1983 robbery, especially, was not minor in nature.  Four victims were held at gunpoint and Petitioner fled the scene with $20,000 in goods, including weapons.  Two of Petitioner's other felonies also involve weapons charges.  Several of his thirty-two misdemeanor convictions involved violence, specifically the five convictions in the 1990s for abusing his cohabitant.

      A comparison of Petitioner's situation with those reviewed by the Ninth Circuit also confirms that his sentence is not grossly disproportionate under established Supreme Court law.  Unlike petitioner in *Reyes*, Petitioner's first strike conviction was not committed while he was a juvenile; he was twenty years old.  Additionally, the description of Petitioner's 1983 robbery conviction makes clear that it was a "crime against a person."  *Cf. Reyes*, 399 F.3d at 969 (referring to *Solem*, 463 U.S. at 296-97, and holding that if development of the record showed that the armed robbery conviction of petitioner in *Reyes* was not a "crime against a person," he would likely be entitled to

relief).  In fact, the 1983 robbery was a crime against four persons who were held at gunpoint.  Like in *Reyes*, Petitioner's most recent criminal history has consisted of misdemeanor offenses, including DUIs, being under the influence of a controlled substance and batteries.  Nevertheless, at the time of his sentence, Petitioner's record of continuing convictions was fairly consistent for over twenty years.  Moreover, like in *Rios*, Petitioner's case is less facially offensive than *Andrade* because Petitioner has to serve 25 years before he is eligible for parole - compared to Andrade's 50 years.  In addition, several of Petitioner's prior convictions have involved firearms.

While a 25-to-life sentence for a nonviolent drug offense is certainly harsh, the California three strikes law continues to be upheld in the face of Eighth Amendment challenges.  *See Ewing,* 539 U.S. at 29-30; *Andrade,* 538 U.S. at 77; *Rios,* 390 F.3d at 1086.  That the current offense was Petitioner's first conviction for possession of cocaine does not overcome the fact that Petitioner has a lengthy criminal history which the State is justified in considering during sentencing, and which this Court must consider when reviewing a sentence under the gross disproportionality principle.  *See Harmelin*, 501 U.S. at956-957 (mandatory life sentence for first drug offense not disproportionate); *Ewing*, 538 U.S. at 29-30 (harsh sentence "justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by [petitioner's] long, serious criminal record").  Petitioner's sentence of 25-to-life for possession of 0.36 grams of cocaine is undoubtedly harsh.  However, reversal of his sentence is not justified under established Supreme Court precedent and the state court's rejection of his cruel and unusual punishment claim is not contrary to, or an unreasonable application, of such precedent.

**IX     Double Jeopardy**

Petitioner filed a supplemental petition adding a claim that the sentencing enhancement based on his prior crimes violated the Double Jeopardy Clause because he was being punished twice for the same crime.  This additional claim is denied on the

merits.  The use of prior convictions to enhance sentences for subsequent convictions does not violate the Double Jeopardy Clause.  *See Spencer v. Texas*, 385 U.S. 554, 560 (1967) (upholding use of prior convictions to enhance sentences for subsequent convictions even if in a sense defendant must relitigate in sentencing proceeding conduct for which he was already tried).  Any such challenge is wholly without merit.  *See Jackson v. Nelson*, 435 F.2d 553, 553 (9th Cir. 1971) (dismissing contentions of equal protection, bill of attainder, double jeopardy and ex post facto against recidivist statute as meritless).  As such, Petitioner's claim must be denied.

## CONCLUSION

Petitioner's motion seeking discovery of information from an article on the justice system in Santa Clara County published in the San Jose Mercury News is DENIED (docket no. 16), as the Court finds it would not aid in consideration of Petitioner's claims.

For the reasons set forth above, the petition for writ of habeas corpus is DENIED. The clerk shall enter judgment in favor of respondent and close the file.

IT IS SO ORDERED.

DATED:  August 14, 2006

_____
JEFFREY S. WHITE
United States District Judge